746 A.2d 1029

JOHN COUCH, PLAINTIFF–RESPONDENT, v. VISITING HOME
CARE SERVICE OF OCEAN COUNTY AND OCEAN COUNTY
HEALTH DEPARTMENT, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2000-–Decided March 2, 2000.

48

Before Judges PRESSLER, ARNOLD, and BILDER.

*Seymour J. Kagan,* argued the cause for appellant Ocean County Health Department in A–1146–98T3 (*Berry, Kagan, Sahradnik, Kotzas & Riordan,* attorneys; *Mr. Kagan,* of counsel; *Dina R. Khajezadeh,* on the brief).

*Philip G. Mylod,* argued the cause for appellant Visiting Home Care Service of Ocean County in A–1194–98T3 (*William H. McKinnon,* on the brief)

No brief was filed on behalf of respondent (*Russell G. Cheek,* attorney, was permitted to argue on respondent's behalf).

The opinion of the court was delivered by

BILDER, J.A.D. (retired and temporarily assigned on recall).

These are appeals, consolidated for purpose of this opinion, by care givers, defendants Visiting Home Care Service of Ocean County and Ocean County Health Department, from an order of the Chancery Division requiring them to continue, for an indefinite period, home nursing care which, in their professional opinion, is beyond their capacity to provide and which, in their professional opinion, places their care givers, registered nurses, licensed practical nurses, and certified home health aides, in a dangerous situation *viz-a-viz* their professional licenses and their professional integrity.

## 1.

The salient facts are largely undisputed. Fifty year old plaintiff John Couch has suffered from multiple sclerosis since 1982 and has lived alone in a ground floor apartment in West Creek since 1983. Beginning in 1990 skilled intermittent nursing services have been provided to him at his home by the county acting through its own nurse employees and through home health services rendered by employees of its private contractor, Visiting Home Care Service. Since early 1998 he has been receiving two hour home visits by a certified home health aide twice a day and concurrent visits of shorter duration by a registered nurse once and sometimes twice a day; a weekly aggregate of about 33 hours when a trained professional is present in Mr. Couch's home.

Since 1994 Couch has been a quadriplegic, able to move only his head. Though the condition has caused progressive physical disability, his mental condition and intellect are unaffected.

In January 1998 Couch developed a decubitus ulcer on his buttocks. The condition was described by the treating surgeon, Dr. Matez, as grade 4, *i.e.* it went down to and affected the bone. The ulcer has been treated, and eighteen months ago, as of August 1998, was apparently under control. This type of condition is endemic to individuals who are confined to a position where constant pressure is exerted to one part of the body. These ulcers are, in layman's language, pressure sores. Dr. Matez described them thus: "One of the absolute hallmarks of treatment of a pressure sore is avoid pressure. In the hospitals we turn patients every two hours side to side to eliminate the pressure from one area to another. The more pressure you put on that area, the more tissue breakdown, the more potential to extend the wound or develop other wounds." The condition is insidious; it can start near the bone and work its way to the surface, initially showing only a superficial skin breakdown. It is also dangerous, capable of leading to an overwhelming systemic infection that can become life-threatening. Surgery was undertaken by Dr. Matez on February 17, 1998 with good result. An addendum to his operative

notes of that date goes a long way toward explaining what underlies this litigation.

Extensive discussions with this patient were undertaken prior to this particular procedure. I had recommended to this patient in-patient care in a wound care center or possibly in-patient care here in our institution. At least I tried to encourage the patient to stay overnight. However, the patient adamantly refused hospital admission in any way, shape, or form on multiple occasions when we had these discussions. Therefore, he will be going home this evening on a same-day basis.

When asked why he was resisting a 24-hour care facility where help would be available all the time, plaintiff testified:

Well, believe me, I've thought about it for a long time. This is 1998, not 1698, and I have the ability to run my household and keep my affairs in order. And with the assistance I do get, everything is fine. I feel more comfortable there. I am able to eat what I want and when I want, almost, within their time frame. I'm able to pursue the interests that I have. And it's my form of being independent.

In his oral decision of August 27, 1998, the trial judge capsulized plaintiff's hunger for independence thus:

And John Couch has no backup from relatives. He is totally handicapped physically, but competent mentally. He wants to remain where he has [been] since 1990. He created an environment which has been safe and secure for nearly a decade. He is happy in his home. Everything that he owns is there, and he wants to spend all of his remaining days in his apartment.

## II.

Although the ulcer was being medically controlled by the surgeon, Dr. Matez, the Visiting Home Care Service considered the care required by the condition to be beyond its capabilities and accordingly on March 9, 1998 advised plaintiff,

The Visiting Home Care Service of Ocean County has provided home health aide service to assist you in your activities of daily living since 1990. Unfortunately, we will no longer be able to provide this service to you after March 24, 1998 due to the unsafe home care situation and your increasing need for more assistance than our home health aides can legally provide.

You do have the right to choose to remain in your home. It is our recommendation, however, based upon our professional nursing assessment, that you obtain the more skilled services of an RN or LPN for your decubitus care and repositioning as well as 24 hour assistance with your activities of daily living at home or in a long term care facility.

And on March 12, 1998 the Ocean County Health Department advised plaintiff:

> The Ocean County Health Department has been providing skilled intermittent nursing services to you since 1990. Over the course of these past eight years, your nursing care needs were met by the agency nurses and your activities of daily living were met by home health aides from Visiting Home Care Services. As your Multiple Sclerosis progressed, your care needs intensified and in January of 1998 when the agency nurse discovered the presence of a decubitus (pressure sore) on your right buttock, orders for additional care were received from your physician and the nurse visited daily to provide care.

> Several attempts to have your decubitus evaluated by your physician were unsuccessful, and finally an office visit was made by you on January 15, 1998. At that time your physician recommended surgery to debride the wound. Again, two appointments were made for surgery and not kept. Finally, the wound was debrided on February 17, 1998. Post surgery your physician increased wound care orders to twice daily.

> Home health aid services were being paid for by Medicare and Home Care Expansion Program (HCEP) monies. On February 7, 1998, the funding for the home health aide under HCEP ended and I believe you made a private arrangement with Visiting Home Care Services to continue with coverage for evening hours.

> This agency's Nursing Supervisor made a visit to your home to evaluate your care needs. The physician had agreed to twice a day visits for wound care, but would have liked more visits per day if possible. Also, we have been informed by Visiting Home Care Services that they are terminating your home health aide services on March 24, 1998. Since your nursing care needs are increasing and you will be without any assistance for your activities of daily living, your care needs exceed the scope of care that the Ocean County Health Department is licensed to provide. For this reason, we are giving you thirty (30) days notice that the Ocean County Health Department will no longer provide you with nursing services after April 14, 1998.

On March 20, 1998 plaintiff brought suit to enjoin Ocean County Health Department and Visiting Home Care Service from terminating in-home skilled nursing and home health aid services to him. Ocean County Health Department and Visiting Home Care Service appeal from an order of August 28, 1998 requiring them to continue indefinitely to provide services at the same level as was provided prior to the appearance of the decubitus ulcer in January 1998.

## III.

On appeal defendants argue that the trial judge's action finds no support in the law. They point to the well recognized principle that actions of a public body, particularly within its field of expertise, are entitled to a presumption of validity, which here has not been overcome. They contend that they are violating State and Federal statutes and rules when they provide the services ordered by the court. And they disclaim any attempt to abandon plaintiff.

Although we generally agree with all these propositions—certainly the trial judge cited no authority for his action—we are persuaded that the real issue is the right of these medical providers to withdraw from a case when in their professional opinion it would be improper and unsafe to continue. In a different context (medical malpractice), in *Matthies v. Mastromonaco*, 310 *N.J.Super.* 572, 598, 709 *A.2d* 238 (App.Div.1998), aff'd, 160 *N.J.* 26, 733 *A.2d* 456 (1999), we said:

> There is no reasonable basis for the apprehension, as expressed by defendant in argument before the trial judge, that the physician will ever be required to perform surgery or administer any other course of treatment that he or she believes to be contraindicated. If the patient selects a course, even from among reasonable alternatives, which the physician regards as inappropriate or disagreeable, the physician is free to refuse to participate and to withdraw from the case upon providing reasonable assurances that basic treatment and care will continue.

Defendants' personnel were unanimous in their professional opinion that it was improper to continue to provide services at the existing level.

The assistant director of Public Health Nursing at the Ocean County Health Department, a registered nurse, expressed an opinion that it was "unsafe for Mr. Couch to remain in the home under the existing program that is presently being afforded to him." The executive director of Visiting Home Care Service, another registered nurse, expressed an opinion that the existing scope of services was "beyond that of the level of the home health aide[s] at this particular point." Visiting Home Care Service's service director, another registered nurse, testified:

> [Plaintiff] at this point requires 24–hour service because of his condition. He cannot turn himself. He cannot feed himself. He cannot move himself. He should not be laying in bed for 12 hours without being turned. That's important nursing care, and it's past where we should be providing service.

And finally, another Visiting Home Care Service registered nurse who had been the direct supervising nurse for plaintiff's care since 1995, testified:

> There are several reasons, but I think the most relevant for the client is that we really cannot provide safely the amount of care that is needed since he has developed the wound that is significant in size and requires much more than the minimum care that we are able to put in at this time. It requires good nursing skill, which is at least repositioning, skin care, proper hydration, improved dietary habits, all of this which would be at least a minimum of every two hours. John can no longer reposition himself. He has a significant wound which does require much more care than can be rendered in the home. There is no significant caregiver. He lives alone. A client when, and God forbid they do reach this position, when it happens, they must have somebody else to give them the needed care, whether it be a close relative, some significant caregiver. We don't have that.

To paraphrase what we said in *Matthies*, when the plaintiff selects a course which the professional nurses feel inappropriate or unsafe, they are free to refuse to participate and to withdraw from the case upon providing reasonable assurances that basic treatment and care will continue. At oral argument on August 27, 1998, the Ocean County Health Department accepted the responsibility for arranging for continued care, advising the court that space was available for plaintiff at the Bayview Nursing Home. As its counsel said, plaintiff should not be compelled to go there, he is competent and capable of making his own decisions. But the professional care givers, registered nurses, licensed professional nurses, and certified aides, cannot be forced to participate in conduct which counters their own professional practices and ethics. The trial judge's requirement that these professionals continue indefinitely to provide services at the same level as was provided prior to the appearance of the decubitus ulcer in January 1998 is an unwarranted invasion of their professional responsibility.

## IV.

It has been some eighteen months since the entry of the August 28, 1998 order appealed from. Conditions have apparently not

significantly changed during that time. We are told that, as can be expected, the ulcers come and go. The situation will have to be reexamined in the light of the present circumstances, plaintiff's present feelings and needs, and the right of the professionals to withdraw from a situation which makes their continuance professionally and ethically unpalatable. If Visiting Home Care Service wishes to withdraw, it should be allowed to do so. If Ocean County Health Department feels the required care exceeds that which it can provide and that continuation of the amount of care it can give is professionally improper, it should be allowed to withdraw such aid. If defendants, or either of them, feel that in the professional judgment of the nurses who must manage the case, they cannot properly and ethically continue their care, provisions must be made to furnish plaintiff with appropriate alternative inpatient 24 hour care or to furnish plaintiff with a reasonable time in which to make his own alternative arrangement. The ultimate decision is for him. *Matthies v. Mastromonaco*, 160 *N.J.* 26, 34, 733 *A.*2d 456 (1999).

The matter is remanded for further proceedings consistent with our opinion.